C. R. JOHNSON, et al., Plaintiffs,

v.

AMERICAN AIRLINES, INC., Defendant.

Fred G. JOHNSON, Plaintiff,

v.

AMERICAN AIRLINES, INC., Defendant.

Civ. A. No. CA–3–80–434–D.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 6, 1982.

On Motion to Reconsider Jan. 12, 1982.

Raymond C. Fay and Alan M. Serwer, Haley, Bader & Potts, Chicago, Ill., James A. Cline, Irving, Tex. (local counsel), for plaintiffs.

Gordon B. Nash, Jr., Gardner, Carton & Douglas, Chicago, Ill., William M. Rippey, Strasburger & Price, Dallas, Tex. (local counsel), for defendant.

## MEMORANDUM OPINION

ROBERT M. HILL, District Judge.

Came on for consideration Plaintiffs' motion to permit notice pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* At the present time, five plaintiffs have opted into the four named plaintiffs' consolidated action against Defendant American Airlines, Inc. (American) by filing written consents pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b). The parties acknowledge that the granting of Plaintiffs' motion could permit hundreds of potentially interested parties similarly situated to the present plaintiffs to participate in this litigation. After considering the parties' pleadings and briefs, together with recent case law, the Court is of the opinion that Plaintiffs' motion should be granted.

Plaintiffs are American flight deck crewmembers who were involuntarily retired after their sixtieth birthdays. Their claim is based primarily on American's failure to permit them to work in the position of flight officer (flight engineer) after reaching age 60. Plaintiffs seek to retain their employment and seniority at age 60 and beyond and obtain back pay and other amounts allegedly owing. The present motion, however, does not concern the merits of Plaintiffs' action. Rather, the issue before the Court is a narrow one and focuses on the propriety of a federal court authorizing notice to class members in an age discrimination action.

### A. The Power of the Court to Issue Notice

Section 7(b) of the ADEA provides that the statute will be enforced in accordance

with the powers, remedies, and procedures provided in 29 U.S.C. § 216(b). This incorporated rule is Section 16(b) of the Fair Labor Standards Act (FLSA), and establishes that employers shall be liable to their employees for violations of the FLSA. Section 16(b) provides in pertinent part:

> Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. *No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.*

(Emphasis added). The italicized sentence is the so-called "opt-in" provision which is at the heart of the present controversy, and differs from the "opt-out" provision in Rule 23 type class actions under the Federal Rules of Civil Procedure. Under Rule 23, each person who falls within the description of the proposed class is a class member and will automatically be bound by a favorable or unfavorable judgment unless he opts out of the suit. The Fifth Circuit held in *La-Chapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975), that the opt out Rule 23 class actions and opt in FLSA § 16(b) class actions are "mutually exclusive and irreconcilable." *Id.* at 289. The *LaChapelle* court held that ADEA actions must proceed, if at all, as an opt in class action and not as a Rule 23 class action. The Fifth Circuit did not consider in *LaChapelle* or any subsequent decision whether and under what circumstances a court is empowered to authorize notice under the opt in provision in an age discrimination suit.

Two circuit courts have considered the question of a court's power to authorize notice to class members informing them of their right to opt into an action. The Ninth Circuit answered in the negative in *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th Cir. 1977). The Ninth Circuit based its decision on two considerations discussed in earlier cases. First, it concluded that permitting notice to be sent to potential plaintiffs would constitute solicitation of claims.

Second, and perhaps more importantly, the court held that notice is not compelled by due process in opt in class actions. In contrast to a Rule 23 class member who is bound in the absence of affirmative acts to exclude himself, an employee's "right to litigate [under Section 16(b) is] not compromised by [his] absence from the class proceedings." *Id.* at 864.

The *Kinney* court was greatly influenced by a district court's examination of the legislative history of Rule 23 and Section 16(b) in *Roshto v. Chrysler Corp.*, 67 F.R.D. 28 (E.D.La.1975). *Roshto* was also an ADEA class action suit. Comparing Rule 23 with Section 16(b), the court concluded that with respect to the latter, the "failure to provide for notice to the class can not [sic] be attributed to mere oversight." *Id.* at 29. Acknowledging that notice serves an important function of informing persons that their rights may have been violated for which there is legal redress, the court discounted this as an interest class notice is designed to further. Instead, the purpose of class notice is to satisfy due process and thereby permits a judgment to be binding on all class members. *See McGinley v. Burroughs Corp.*, 407 F.Supp. 903 (E.D.Pa. 1975).

The Second Circuit in *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2d Cir. 1978), agreed with this view that due process does not *require* the ordering of notice to class members under the opt in provision of Section 16(b). The *Braunstein* court refused to extrapolate from this, however, that a court lacks the power to authorize class notice. In a *per curiam* opinion, the Second Circuit stated that "[a]lthough one might read the [FLSA], by deliberate omission, as not providing for notice, we hold that it makes more sense, in light of the 'opt-in' provision of § 16b . . . as permitting, rather than prohibiting, notice in an appropriate case." *Id.* at 336.

█ The *Braunstein* court also addressed the other major concern voiced in *Kinney*: the fear that the court would be involved

"in the stirring up of litigation and the solicitation of claims." *Kinney*, 564 F.2d 859, 863. The Second Circuit noted that the Supreme Court has recently protected lawyer advertising and communications with class members against challenges based on solicitation and vexatious litigation. *See e.g., Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Other courts similarly have rejected the *Kinney* reasoning on the solicitation issue. *Monroe v. United Air Lines, Inc.*, 90 F.R.D. 638 (N.D.Ill.1981); *Frank v. Capital Cities Communications, Inc.*, 88 F.R.D. 674 (S.D.N.Y. 1981); *Soler v. G. & U. Inc.*, 86 F.R.D. 524 (S.D.N.Y.1980); *see Riojas v. Seal Produce, Inc.*, 82 F.R.D. 613 (S.D.Tex.1979). There is thus abundant support in the above cited cases that the permitting of notice does not amount to unwarranted solicitation. In addition, the authorization of class notice is clearly distinguishable from the "egregious conduct," *Frank*, 88 F.R.D. 674, 676, condemned in *Ohralik v. Ohio State Bar Ass'n.*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). Moreover, while recognizing the truism that the "awakening of sleeping plaintiffs by either the plaintiff or the Court would fly in the teeth of the centuries old doctrine against the solicitation of claims," *Roshto*, 67 F.R.D. 28, 30, the Court is equally cognizant of more deeply rooted tradition which has been the benchmark of judicial activity since time immemorial: "avoiding multiplicity of suits." *Braunstein*, 600 F.2d 335, 336.[1]

## B. The Propriety of Authorizing Notice

■ Having determined the threshold question in this action that the Court has the power to authorize notice to class members informing them of their right to opt in to the action,[2] the Court next focuses on the crux of the present controversy: *whether an action maintained by employees occupying perhaps the most prestigious and high-paying position at American Airlines constitutes an appropriate circumstance in which to authorize class notice.* The court in *Soler*, 86 F.R.D. 524, was careful to point out the plaintiffs suing under the FLSA were migrant workers, many of whom were illiterate, non-English speaking, and physically isolated in labor camps. Similarly, the plaintiff in *Riojas*, 82 F.R.D. 613, were field harvest workers bringing suit under the FLSA for violations of the minimum wage provision. In holding that class notice to indigents and minorities would further the primary goal of the FLSA, the court concluded: "In a case such as this where the alleged class members are migratory and difficult to locate, it is nothing more than an act of fundamental fairness to allow the Texas Rural Legal Aid to attempt to notify these farm workers of allegedly illegal activities and the availability of legal action." *Id.* at 619.

The Court is of the opinion that the particularly compelling factual context in *Soler* and *Riojas* does not make the factual context in the present action any less appropriate for the ordering of class notice.[3] There

1. American attempts to distinguish the authorization of class notice by the *Soler* and *Riojas* courts, *see* discussion *infra*, from the facts of the present action because the plaintiffs in *Soler* and *Riojas* were migrant farm workers who were unlikely to have access to information regarding availability of a legal remedy in the absence of class notice. Assuming American is correct in its assertion that the Plaintiffs herein are well educated flight officers, and hence by their status are more likely to be aware of their legal rights and opportunities to litigate under the ADEA, then the fear of multiple lawsuits becomes all the more real and compelling.

2. *See Frank*, 88 F.R.D. 674, 675, for a rejection of the contention that authorization of notice is

appropriate for an FLSA, but not an ADEA, action: "Congress saw fit to make the FLSA § 216(b) 'opt-in' provisions applicable to the ADEA. Both statutes are remedial; the argument that claims of age discrimination are so different in nature from claims for statutory minimum wages that 'opt-in' provisions should not apply must be addressed to the Congress, and not to the courts."

3. American cites to the recent opinion in *Garges v. Eastern Air Lines, Inc.*, No. 80–663 (S.D. Fla. Sept. 1, 1981), an ADEA suit brought by air captains, wherein the court declined to follow the authorization of notice in *Soler* and *Riojas*. Noting that the *Riojas* court focused on "appropriate cases," the *Garges* court sum-

is no reason to presume that flight officers would be aware of the present litigation or their right to join as plaintiffs—simply because these employees are fortunate enough to have received the education necessary to have secured their positions as flight officers in the first place. In one sense, this action presents an even more compelling context for the authorization of notice than the migrant farm workers who were all clustered around the defendants' farms and camps. Here, the potential plaintiffs do not work together at a single office but are scattered at flight bases throughout the United States. As a practical matter, it seems unlikely that these present or former employees would have knowledge of this specific action which was originally filed in Chicago and then transferred to the Northern District of Texas. While the Court is aware of and does not sanction the Plaintiffs' two year delay in filing this motion subsequent to the filing of their original complaint, the Court does not believe this factor outweighs the more pressing concern that if "notice is prohibited potential plaintiffs will be informed of their opt-in opportunities only by chance." *Monroe*, 90 F.R.D. 638, 640.[4] The Court thus concludes that authorization of class notice is appropriate in the instant action, for such notice will promote both the Court's interest in judicial economies as well as the broad remedial purposes of the ADEA by affording potential plaintiffs the maximum opportunity to vindicate their statutory rights.

## C. The Practicality of Authorizing Notice

The Plaintiffs seek an Order requiring American to provide them with the names, addresses, and dates of birth for current and former American flight deck crewmembers (except flight engineers represented by the Flight Engineers' International Association) whose sixtieth birthdays occur between April 6, 1978, and December 31, 1984.[5]

The Court is of the opinion that the class Plaintiffs seek to represent satisfies the "similarly situated" requirement. *Riojas*, 82 F.R.D. 613, 616. Moreover, the discovery request, together with the proposed method of communicating the notice which includes direct mail, posting on company bulletin boards at flight bases and publishing the notice without comment in American's *The Flight Deck*, are both reasonable and in accordance with prior authority. *Monroe*, 90 F.R.D. 638; *Frank*, 88 F.R.D. 674; *Soler*, 86 F.R.D. 524. The proposed notice, *see* Appendix, is practically identical to that approved by Judge Shadur in *Monroe*, and the Court believes the proposed notice is both informative and neutral in that the notice makes clear that prospective plaintiffs are free to select their own counsel and will be bound by a favorable or unfavorable judgment if the choice to opt in is made. American will be given 10 days from the filing of this Order to object to

---

marily concluded that "[e]ven if it were inclined to follow the rule in *Braunstein*, it is the Court's view that notice is inappropriate under the circumstances of this case." This Court is reluctant to infer from the above statement what the *Garges* court perceives as falling within the scope of appropriate circumstances; the Court is even more reluctant to encompass such a decision, although factually similar to the present action, where the *Garges* court was essentially silent as to its reasoning or analysis.

4. The Court is not convinced that the additional concern of the *Monroe* court, created by the sending of the defendant's letter to flight officers suggesting that their interests in the lawsuit could be adequately represented by the defendant airlines, *id.*, sufficiently distinguishes the present action so as to make the *Monroe* holding applicable, as American would urge. While the need for a "neutral discussion," *id.*,

in the form of class notice may be slightly less compelling in the present action, the *Monroe* court's recognition that "[i]t would make little sense for Congress to provide for a class action and at the same time cause the suit's existence to be 'hidden' from potential class members," *id.* is the linchpin upon which this decision would be based.

5. Plaintiffs selected April 6, 1978, because on this date Section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2), was amended to preclude an employer from relying on its pension plan to retire its employees. The December 31, 1984, date was selected as the cut-off date to account for those who have already been allegedly discriminated against and who will turn 60 before the projected final conclusion of this action, together with appeals.

the form of notice, and Plaintiffs will have an additional 5 days to respond. Plaintiff originally requested a 30 day time frame from the date of transmittal of notice in which potential class members would be permitted to opt in. Plaintiffs subsequently modified this response time to 14 days from the date of receipt of notice. The Court believes that a 21 day response time from the date of transmittal of the notice is the most reasonable, simple to administer, and appropriate in light of Plaintiffs' own delays in filing the present motion. The Court is reluctant to establish a discovery schedule at the present time. The Court cautions the parties, however, that unnecessary delays will be tolerated only under the most compelling of circumstances.

### D. *Applicability of the ADEA Notice Requirements to Potential Plaintiffs*

■ The last issue this Court must consider is whether additional plaintiffs who opt in to this action by filing their written consents in this Court pursuant to Section 16(b) of the FLSA must satisfy the notice provisions of the ADEA.[6] The Fifth Circuit likewise has not resolved this question. While some courts have held that individual compliance with the notice provisions of the ADEA is a jurisdictional requirement for *all* consenting plaintiffs, *Oshiro v. Pan American World Airways, Inc.*, 378 F.Supp. 80, (D.Hawaii 1974); *Price v. Maryland Cas-*

ualty Co., 62 F.R.D. 614 (S.D.Miss.1972), the Court is more persuaded by recent decisions reaching the opposite result, and hereby holds that individual compliance with Sections 626(d) and 633(b) is not necessary so long as the named representative has satisfactorily complied with the applicable notice provisions.

The Ninth Circuit recently considered this issue *inter alia* in *Bean v. Crocker Nat'l Bank*, 600 F.2d 754 (9th Cir. 1979), and held that the ADEA permits grievants who have complied with Section 626(d) to bring representative actions "on behalf of 'similarly situated' employees who may not have individually filed notice of intent to sue with the Secretary." *Id.* at 759. Judge Bright noted, *id.* at 759, that in the analogous context of Title VII suits, the Fifth Circuit has held in *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968), that unnamed class members are not required to individually file a charge with the Equal Employment Opportunity Commission as a prerequisite to joining the lawsuit. In addition, the court construed the Supreme Court's recent ADEA decision in *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), as permitting unnamed parties in an ADEA class action to proceed without personally satisfying the notice requirements of section 626(d). *Bean*, 600

---

**6.** The applicable provisions are 29 U.S.C. § 626(d), which provides:

(d) No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

Upon receiving such a charge, the Secretary shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion;

and 29 U.S.C. § 633(b), which provides:

(b) In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated: *Provided*, That such sixty-day period shall be extended to one hundred and twenty days during the first year after the effective date of such State law. If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

F.2d 754, 759–60. The Ninth Circuit reasoned that the named representatives compliance would adequately alert the Department of Labor of possible ADEA violations. This Court is in agreement with Judge Bright's view that the

> ADEA's broad remedial purposes of prohibiting arbitrary age discrimination and of promoting the employment of older persons based on their ability rather than age are best served by an interpretation of 29 U.S.C. § 216(b) that permits similarly situated complainants to join in an action as unnamed parties so long as a named plaintiff has complied with the notice requirements of 29 U.S.C. § 626(d).

*Id.* at 759. *See Shuster v. Federated Dept. Stores,* 508 F.Supp. 118 (N.D.Ga.1980); *Cavanaugh v. Texas Instruments, Inc.,* 440 F.Supp. 1124 (S.D.Tex.1977); *Pandis v. Sikorsky Aircraft Division of United Technologies Corp.,* 431 F.Supp. 793 (D.Conn.1977); *see also Mistretta v. Sandia Corp.,* 639 F.2d 588 (10th Cir. 1980).

Not only is the *spirit* of the ADEA furthered by this relaxation of the filing requirement, but the *letter* of the statute likewise calls for a liberal reading of the notice requirements. As the *Shuster* court recently noted, 508 F.Supp. 118, 121, the 1978 amendment to section 626(d) replaced the requirement that "the individual" give the Secretary of Labor notice with the provision that only a "charge ... [be] filed with the Secretary." The *Shuster* court concluded that "Congress eliminated the liberal requirement that the specific plaintiff in the civil action file a timely notice with the Secretary of Labor." *Id.*

The legislative intent of Congress in enacting the ADEA is not the sole factor compelling a holding that consenting plaintiffs need not file a timely notice with the Secretary of Labor. Judicial economy likewise counsels this holding. As noted by Judge Singleton on *Cavanaugh,* "it would be wasteful to force every similarly-situated individual to 'go through the repetitive and doubtlessly futile motions of another agency notice and waiting period.'" *Cavanaugh,* 440 F.Supp. 1124, 1127, *citing Pandis*

*v. Sikorsky Aircraft Division of United Technologies Corp.,* 431 F.Supp. 793 [798] (D.Conn.1977).

While the consenting potential plaintiffs in the instant action need not comply with the notice filing requirements of section 626(d) since Johnson, the named representative, has complied with this provision, the consenting plaintiffs will be subject to the limitations imposed by the *Cavanaugh* and *Pandis* courts. First, consenting plaintiffs who have not personally complied with section 626(d) will be limited to the categories of claims raised by the representative Plaintiff. Second, the representative Plaintiff may only represent those similarly situated employees who could have timely complied with the notice requirement of section 626(d) as of March 3, 1981, the date that the last named plaintiff in this consolidated action filed with the Department of Labor. *Cavanaugh,* 440 F.Supp. 1124, 1128; *Pandis,* 431 F.Supp. 793, 798. Thus, consenting plaintiffs who choose to opt into this suit must have been able to timely satisfy section 626(d) as of March 3, 1981, or else they will be precluded from joining this litigation.

### E. *Conclusion*

In summary, this Court authorizes the sending of notice to potential plaintiffs to facilitate their opting into the present action. It is hereby ORDERED that:

(1) American provide Plaintiffs within 20 days of the file date of this Order a list of names, addresses and dates of birth for all current and former first pilots, co-pilots, or flight officers who have been retired at age sixty since April 6, 1978, or who are currently employed by American and will become sixty by December 31, 1984 (potential plaintiffs);

(2) American shall have 10 days from the file date of this Order to object to Plaintiffs' proposed notice, and Plaintiffs have 5 days from that date to respond;

(3) in the event American makes no objection to the form of Plaintiffs' proposed notice:

(a) after receipt of the list described in (1) above, Plaintiffs are to promptly send the notices to the potential plaintiffs and notify American and the Court of the date of transmittal; and (b) American shall publish the notice without comment in their company newspaper or similar publication in the next regular issue following 10 days after the entry of this Order, as well as post the notice without comment on employee bulletin boards at American flight bases within 15 days of the file date of this Order; and

(4) potential plaintiffs will be permitted to *opt in* this action only if their respective consent forms are received by the Clerk of this Court within 21 days of the date of plaintiffs' transmittal of the notice as set out above. Potential plaintiffs are hereafter permitted to *opt in* simply by filing a written consent pursuant to 29 U.S.C. § 216(b), without filing a charge alleging unlawful discrimination pursuant to 29 U.S.C. § 626(d) or 633(b).

### On Motion For Reconsideration

Came on for consideration Defendant's Motion for Reconsideration of the Court's Order Allowing Notice to Potential Plaintiffs, or in the Alternative, to Permit Appeal of the Court's Order Pursuant to 28 U.S.C. Sec. 1292(b) and Defendant's Objections to the Form of Notice to Potential Plaintiffs. Based on this Court's Memorandum Opinion of January 6, 1982 and the discussion which follows, the Court is of the opinion that Defendant's motion should be denied *in toto*.

### *Motion to Reconsider*

Defendant ("American") challenges the Court's December 17, 1981, Order authorizing notice to potential plaintiffs of their right to opt-in to the present age discrimination suit on four grounds. The question of the Court's authority is discussed in detail in the Memorandum Opinion and need not be repeated here. In addition, because of the Court's holding that consenting plaintiffs need not formally comply with the notice requirements so long as the class of potential plaintiffs is limited to those who could have timely complied on the date that the representative plaintiff filed his discrimination charge, the Court need not further address Defendant's objection based on time-barred claims.

With respect to the Court's holding that similarly situated potential plaintiffs who opt-in need not individually satisfy the notice provision of § 626(d) of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Court notes that the Fifth Circuit declined to resolve this issue in *McCorstin v. United States Steel Corp.*, 621 F.2d 749 (5th Cir. 1980), because the named plaintiffs' notice to the Secretary of Labor was not found to have embraced the claims of similarly situated employees. Thus, the issue remains to be ultimately resolved in this Circuit. However, in addition to the decisions cited in the Memorandum Opinion, the Court finds further support for its holding in *Sussman v. Vornado, Inc.*, 90 F.R.D. 680 (D.N.J.1981) and *Russell v. Curtin Matheson Scientific, Inc.*, 17 FEP Cases 845 (S.D.Tex.1978), *as amended* 18 FEP Cases 179, *appeal dismissed*, 18 FEP Cases 866 (5th Cir.), *cert. denied*, 439 U.S. 972, 99 S.Ct. 466, 58 L.Ed.2d 432. The Court's holding on this issue will not be disturbed.

Defendant also challenges the Court's authorization of notice to potential plaintiffs who have not yet reached their sixtieth birthdays on the basis that such persons who attempt to opt-in lack standing. The Court's Order authorized the sending of notice to those currently employed by American who are or will become sixty by December 31, 1984. The Court notes that a similar time frame was sanctioned in *Monroe v. United Air Lines, Inc.*, 90 F.R.D. 638 (N.D. Ill.1981), a case which closely resembles the present action.[1] Plaintiffs' justification for

---

1. Notice was authorized to persons whose sixtieth birthdays are between April 6, 1978, and February 29, 1984. *Id.* at 641.

the December 1984 cut-off is that this is based on a reasonable forecast of the duration of the present litigation, including any appeals. While this is persuasive to a certain extent, it is important to emphasize that Plaintiffs are not solely challenging the act of forced retirement at the age of sixty but are also challenging various acts of discrimination prohibited by 29 U.S.C. § 623(a)(1) and (2).[2] So long as a potential plaintiff alleges that he has been discriminated against on the basis of age and that the particular activity falls within the categories of claims raised by the representative Plaintiff, the standing requirement will be satisfied. The Court does not deny that the issue of standing may be relevant for particular individuals who attempt to opt-in; the Court is opposed, however, to limiting the issuance of notice on this basis and thereby precluding potential plaintiffs at the outset from litigating this issue on an ad hoc basis.

### Interlocutory Appeal

■■■■ An interlocutory appeal is appropriate pursuant to 28 U.S.C. § 1292(b) when the court determines that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an appeal from the order may materially advance the ultimate termination of the litigation. If the district judge so determines, it is then within the discretion of the circuit court to permit or dismiss the appeal. The court is of the opinion that an interlocutory appeal is not warranted by the circumstances of this action and accordingly denies American's motion.

American's motion is based on the authorization of notice to potential plaintiffs, rather than the merits of the discrimination claims. Even if this Court or the Fifth

Circuit was to agree that notice should not be authorized, this would in no way affect the right of the existing Plaintiffs to proceed on the merits in this action. Because the present Plaintiffs could nonetheless proceed to trial, the resolution of the authorization of notice is neither a controlling question of law nor does it materially advance the ultimate termination of this litigation. As Plaintiffs note in their brief, American's reliance on *Joe Grasso & Son, Inc. v. United States,* 42 F.R.D. 329 (S.D. Tex.1966), *aff'd,* 380 F.2d 749 (5th Cir. 1967), is misplaced. The district court granted an interlocutory appeal, despite its recognition of the general rule that such appeals are not favored. The court based its decision on two admittedly compelling considerations, neither of which exist herein: (1) a trial would have been utterly useless in the event that the interlocutory order was reversed on appeal; and (2) the defendant indicated an affirmance would make the possibility of settlement "very very likely." 42 F.R.D. 329, 334. An interlocutory appeal as applied to this action is likewise distinguishable from *Tokio Marine & Fire Ins. Co. v. Aetna Cas. & Surety Co.,* 322 F.2d 113 (5th Cir. 1963), where the failure to grant an interlocutory appeal could have resulted in the termination of litigation altogether on the basis of absence of jurisdiction. In contrast, permitting an interlocutory appeal here would tend to delay, rather than expedite, termination of the litigation and would frustrate the remedial purposes of the ADEA. The Court is further buttressed in its decision by the Fifth Circuit's recent dismissal of an interlocutory appeal in *Curtin Matheson Scientific, Inc. v. Russell,* 18 FEP Cases 866 (5th Cir. 1978), *cert. denied,* 439 U.S. 972, 99 S.Ct. 466, 58 L.Ed.2d 432, where the issue likewise focused on the applicability of filing requirements for consenting plaintiffs

**2.** Section 623(a)(1) and (2) provide:
(a) It shall be unlawful for an employer—
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age.

in an ADEA suit timely filed by the named plaintiff. American's motion for interlocutory appeal should be denied.

Without waiving their objections to the authorization of notice, American also filed objections to the Plaintiff's proposed notice. The Court has reviewed the parties' briefs and proposals, and is of the opinion that Plaintiff's proposed notice, with the minor alterations illustrated by the attached modified notice, is a fair and impartial notice which adequately serves its purpose. Moreover, this form of notice is practically identical to the notice sanctioned in *Monroe*, 90 F.R.D. 638.

Having concluded that the Court's December 17 Order and Memorandum Opinion are to remain in force and unaltered, and having resolved the dispute as to the form of notice, the Parties should now comply with paragraphs 3 and 4 of the December 17 Order. The file date referred to in ¶ 3(b) is to be substituted with the file date of this new Order.

It is so ORDERED.

To: PERSONS EMPLOYED BY AMERICAN AIRLINES, INC., AS FIRST PILOTS (CAPTAINS), COPILOTS, OR FLIGHT OFFICERS, AND WHOSE SIXTIETH BIRTHDAYS ARE BETWEEN APRIL 6, 1978, AND DECEMBER 31, 1984.

RE: Age Discrimination in Employment Act (ADEA) action against American Airlines, Inc.

These cases were filed in 1979 by American flight deck crewmembers who allege they were involuntarily retired shortly after their sixtieth birthdays. Plaintiffs claim that American violated the ADEA, 29 U.S.C. § 621 *et seq.*, by refusing to permit them to transfer to the position of Flight Officer (flight engineer) on or after their sixtieth birthdays. They seek principally (1) to retain their employment and seniority at age 60 and beyond and (2) to obtain back pay and other amounts allegedly owing.

If you are among the persons to whom this notice is addressed and you wish to have your right to employment and seniority with American beyond your sixtieth birthday litigated in this case, you should file your consent to be made a party plaintiff with the Clerk of the Court. It is entirely your own decision whether or not to do so and, if you do elect to become a party plaintiff, whether you prefer to be represented by the present plaintiffs' attorneys [1] or by an attorney of your choosing. If you file a consent through a separate attorney, your Notice of Consent should be under the caption of the cases as listed above, should contain your name, address, telephone number, date of birth, date of signing and signature, and should state: "I hereby consent to be a party plaintiff in this case."

As already stated, you are not required to join in this case by filing your consent or to take any action unless you want to. It is completely voluntary. However, your determination whether or not to take action should be made promptly. Unless a Notice of Consent is actually filed with the Court on or before _____, 1982, you will not be permitted to join this case.

If you do not file a consent form and join in this case, you will not receive any back wages or other relief from the case if the plaintiffs prevail here. Any such relief would be obtainable by you only if you proceeded by bringing an independent action within the time provided by law.

If however you decide to join this case by filing your consent, you will be bound by the judgment of the Court on all issues of the case, whether it is favorable or unfavorable to you.

This notice is for the sole purpose of determining the identity of those persons

---

[1] Plaintiffs' attorneys are:
Raymond C. Fay and Alan M. Serwer
HALEY, BADER & POTTS
77 West Washington Street—Suite 1616
Chicago, Illinois 60602
(312) 782–7416

If you wish them to represent you, you should contact them directly. You will have the opportunity to discuss with them in detail the nature of this case, including attorney's fees, together with other obligations you may incur.

who wish to be involved in this case. Although the Court has authorized the sending of this notice, there is no assurance at this time that the Court will grant any relief in this case.

The ADEA prohibits anyone from discriminating or retaliating against you if you choose to take part in this case.

C. R. Johnson, Fred G. Johnson, *et al.*

By: _____

One of their Attorneys

This notice has been authorized by the Honorable Robert M. Hill, the Judge to whom the case is assigned.